UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
JUAN PINEDA,

                Plaintiff,         Case No. 21-cv-03762

                    v.         **COMPLAINT**

BARBERRY ROSE MANAGEMENT COMPANY, INC. d/b/a HOWAL MANAGEMENT CORP., ARM MAINT. INC., 1520-26 ST. NICHOLAS HOLDING LLC, BSF 574 WEST 161ST STREET HOLDING LLC and LEWIS BARBANEL,

                Defendants.
---------------------------------------------------------------X

    Plaintiff JUAN PINEDA ("Plaintiff" or "Pineda"), by his attorneys, RAPAPORT LAW FIRM, PLLC, and MILLER LAW, PLLC, as and for his Complaint against BARBERRY ROSE MANAGEMENT COMPANY, INC. d/b/a HOWAL MANAGEMENT CORP., ARM MAINT. INC., 1520-26 ST. NICHOLAS HOLDING LLC, BSF 574 WEST 161ST STREET HOLDING LLC and LEWIS BARBANEL ("Barbanel") (collectively, "Defendants"), alleges as follows:

## PRELIMINARY STATEMENT

    1. Plaintiff brings this action for unpaid wages, including unpaid minimum wages, overtime compensation and interest thereon, liquidated damages and other penalties, injunctive and other equitable relief and reasonable attorneys' fees and costs, under, *inter alia*, the Fair Labor Standards Act ("FLSA") §§ 6 and 7, 29 U.S.C. §§ 206 and 207.

    2. This action further invokes diversity jurisdiction and the supplemental jurisdiction of this Court to consider claims arising under New York Labor Law ("NYLL") (*e.g.*, New York Wage Payment Act; NY Labor Law §§ 191, 193, and 195; 12 N.Y.C.R.R. Part 141-1.9 and 2.10, and Part 142; and NY Labor Law § 215).

3. At all relevant times, Defendants required Plaintiff to work in excess of forty (40) hours per week without paying him overtime compensation as required by the FLSA and NYLL.

## JURISDICTION AND VENUE

4. Subject matter jurisdiction exists pursuant to 28 U.S.C. §§ 1331 and 1137 because this case arises under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. The Court has supplemental jurisdiction over the New York State law claims pursuant to 28 U.S.C. §1367.

5. Venue is appropriate in this district pursuant to 28 U.S.C. §1391 because Defendants transact business and have agents in the Southern District, and this is the judicial district in which the events giving rise to the claims occurred, Plaintiff having performed work for Defendants in Manhattan. Defendants have facilities and employed Plaintiff in this district.

6. This Court has personal jurisdiction over the Defendants pursuant to New York Civil Practice Law and Rules § 301 in that, *inter alia*, Defendants reside and/or transact business within this State, employed Plaintiff within the State of New York, and otherwise engaged in conduct that allows for the exercise of jurisdiction as permitted by the Constitution of the United States and the laws of the State of New York, and accordingly may be served with process pursuant to Fed. R. Civ. P. 4(h)(1).

## THE PARTIES

**Plaintiff:**

7. Plaintiff is an adult, natural person who resides in the City, County and State of New York.

8. Beginning in or about March 2016, Plaintiff was (and he continues to be) employed by Defendants as a maintenance/construction worker at apartment buildings in Upper Manhattan that are owned and controlled by Defendants.

9. As described herein, Defendants have knowingly engaged in unlawful business practices by requiring Plaintiff to work numerous hours of overtime on a daily and/or weekly basis without overtime compensation that Defendants were obligated to pay under the FLSA and NYLL; paying weekly sums that resulted in effective hourly rates below New York minimum wage; and failing to provide wage notices and accurate wage statements required by NYLL.

**Defendants:**

10. At all relevant times, Defendants were and still are a centrally managed real estate enterprise (the "Barberry Enterprise") that owns, controls, and manages apartment buildings (the "Barberry Buildings") in New York City.

11. During the time period relevant to Plaintiff's causes of action, the Defendants' real estate enterprise was controlled by individual defendant Lewis Barbanel, who had the status of joint employer of Plaintiff.

12. Barbanel exercised unified ownership and control over approximately forty-six (46) apartment buildings in New York City through his various management companies (the "Management Entities"), title-holding entities (the "Title-Holding Entities") and investment entities ("Investment Entities"), each of which had Barbanel as its principal, managing member, manager and/or most senior officer.

13. At all relevant times, the Barberry Enterprise had a principal place of business at 1024 Broadway, Woodmere, New York 11598, from which it owned, operated and managed the Barberry Buildings under the same policies regarding the payment of wages to building maintenance employees.

14. Upon information and belief, the Barberry Enterprise issues earnings statements to superintendents and porters at the Barberry Buildings, regardless of the particular building where they are assigned to work, under the name "Arm Maint Inc" and it identifies 1024 Broadway, Woodmere, New York 11598 as its address.

15. Title to each of the Barberry Buildings is nominally vested in the Title-Holding Entities, each of which is wholly owned and controlled by the Barberry Enterprise, and each having Barbanel as its principal, most senior manager or officer.

16. The Barberry Enterprise carried out common employment practices, policies and procedures by, *inter alia*, issuing directives that were communicated by property managers to superintendents, porters and other maintenance workers.

17. Defendants also had a common practice of issuing pay statements that did not comply with the New York Labor Law, including, among other omissions, failing to correctly set forth hours worked and/or correctly identifying the manner by which paychecks were calculated.

**Individual Defendant, Lewis Barbanel:**

18. Barbanel is an adult, natural person who, upon information and belief, resides in Nassau County, New York.

19. Upon information and belief, Barbanel maintains a principal place of business at 1024 Broadway, Woodmere, New York 11598, which is also the principal office of the Barberry Enterprise.

20. Upon information and belief, at all relevant times, Barbanel was (and he continues to be) the most senior executive of the Title-Holding Entities, Investment Entities and the Management Entities that comprise the Barberry Enterprise, through which the Barberry Enterprise invests in, owns and controls the Barberry Buildings.

21. During the time periods relevant to this Complaint, Barbanel was the managing member or senior executive of the Title-Holding Entities and Management Entities, which exist to nominally hold title to and manage the Barberry Buildings but, in fact, are under Barbanel's control.

22. Upon information and belief, Barbanel is liable for the wages of Plaintiff under New York Business Corporation Law § 630 and New York Limited Liability Company Law § 609(c).

23. Upon information and belief, Barbanel has managerial and operational control over the Defendants' financial affairs and personnel policies, including, but not limited to, matters and policies pertaining to compensation of employees and overtime policies.

24. Upon information and belief, Barbanel is the president of Barberry Rose Management Co., Inc. ("BRMC").

25. Barbanel possessed and exercised operational control over the Barberry Enterprise.

26. On the public profile that Barbanel maintains on Linkedin.com, Barbanel describes himself as follows: "Lewis Barbanel is the president of Barberry Rose Management, a business founded in 1965 by his father Herbert Barbanel. Lewis focuses on the acquisition and growth of both residential apartment houses and commercial properties; specifically, he specializes in Rent Regulated buildings in New York City." https://www.linkedin.com/in/lewis-barbanel-599b3940 (accessed on April 27, 2021 at 8:30 p.m.).

27. On his public Linkedin.com profile, Barbanel further states the following about himself: "He oversees the BRM portfolio of buildings, which encompasses properties including 5-story walk up apartment houses, large elevator buildings, office buildings and

5

commercial properties." https://www.linkedin.com/in/lewis-barbanel-599b3940 (accessed on April 27, 2021 at 8:30 p.m.).

28. Barbanel determined the terms of employment wages and compensation of Plaintiff, established Plaintiff's duties and schedule, and had ultimate decision-making authority for the hiring and firing of employees.

**BRMC:**

29. BRMC identifies itself on its letterhead and other correspondence as "BARBERRY ROSE MANAGEMENT COMPANY INC. dba HOWAL MANAGEMENT CORP."

30. Upon information and belief, BRMC's use of the name "Howal Management Corp." is unauthorized in that there is no corporation that is currently authorized to conduct business in New York named "Howal Management Corp."

31. Upon information and belief, BRMC is a corporation organized and existing under the laws of the State of New York.

32. Upon information and belief, BRMC maintains its principal place of business at 1024 Broadway, Woodmere, New York 11598.

**Arm Maint. Inc.**

33. Upon information and belief, Arm Maint. Inc. (hereinafter "AMI") is a corporation organized and existing under the laws of the State of New York.

34. Upon information and belief, AMI maintains its principal place of business at 1024 Broadway, Woodmere, New York 11598.

35. Upon information and belief, AMI is owned and controlled by Barbanel, and it is part of the Barberry Enterprise, and it issues paychecks to maintenance personnel, including but not limited to Plaintiff.

36. Upon information and belief, AMI and BRMC operate as cogs in the same residential real estate enterprise that is under the ultimate control of Barbanel, and they further the business interests of this unified business enterprise.

37. Upon information and belief, AMI was (and it continues to be) completely dominated by Barbanel and BRMC and, for all practical purposes, AMI existed solely to advance the interests of Barbanel, BRMC and the Barberry Enterprise.

38. Upon information and belief, AMI and BRMC operated from the identical office space and telephone number; and funds were readily transferred between AMI, BRMC and the Title-Holding Entities, each of which existed for the singular function of generating profits from the Barberry Buildings for Barbanel.

**1520-26 ST. NICHOLAS HOLDING LLC:**

39. Upon information and belief, in a transaction consummated on or about October 2, 2013, the Barberry Enterprise acquired adjoining apartment buildings located at 1520-1526 St. Nicholas Avenue, New York, New York 10033 (the "St. Nicholas Ave. Buildings").

40. The Barberry Enterprise exercises ownership and control of the St. Nicholas Ave. Buildings through its title-holding entity, 1520-26 St. Nicholas Holding LLC.

41. Upon information and belief, at all relevant times, 1520-26 St. Nicholas Holding LLC was, and it continues to be, completely dominated by Barbanel, and, for all practical purposes, 1520-26 St. Nicholas Holding LLC exists solely to advance the interests of Barbanel and the Barberry Enterprise.

42. Upon information and belief, 1520-26 St. Nicholas Holding LLC maintains a principal place of business at 1024 Broadway, Woodmere, New York.

43. Upon information and belief, 1520-26 St. Nicholas Holding LLC is a corporation organized and existing under the laws of the State of New York.

**BSF 574 West 161st Street Holding LLC:**

44. Upon information and belief, in a transaction consummated on or about Jun 21, 2016, the Barberry Enterprise acquired the apartment building located at 574 West 161st Street, New York, New York 10032 (the "West 161st Street Building").

45. The Barberry Enterprise exercises ownership and control of the West 161st Street Building through its title-holding entity, BSF 574 West 161st Street Holding LLC.

46. Upon information and belief, at all relevant times, BSF 574 West 161st Street Holding LLC was, and it continues to be, dominated by Barbanel.

47. Upon information and belief, BSF 574 West 161st Street Holding LLC maintains a principal place of business at 1024 Broadway, Woodmere, New York.

48. Upon information and belief, BSF 574 West 161st Street Holding LLC is a corporation organized and existing under the laws of the State of New York.

## FACTUAL ALLEGATIONS

49. At all relevant times, Defendants were employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

50. At all relevant times, Defendants employed and/or continue to employ Plaintiff within the meaning of the FLSA and all other statutes referred to in this Complaint.

51. At all relevant times, Defendants employed, and/or continue to employ, Plaintiff within the meaning of the NYLL, §§ 2 and 651.

52. Upon information and belief, at all relevant times, Defendants have had gross revenues in excess of $500,000.00.

8

### *Defendants as Joint Employers*

53. Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay building maintenance employees by the same method, and share control over employees.

54. Each Defendant possessed substantial control over the policies and practices over Plaintiff's working conditions.

55. Defendants jointly employed Plaintiff and were Plaintiff's employer within the meaning of 29 U.S.C. 201 *et seq.* and the NYLL.

56. Defendants, collectively as the Barberry Enterprise, had the power to hire and fire Plaintiff and set Plaintiff's work schedule and conditions of employment.

57. Defendants, collectively as the Barberry Enterprise, determined the rate and method of paying Plaintiff and maintained Plaintiff's employment records.

58. Plaintiff is informed and believes that, at all relevant times, the constituent individuals and entities of the Barberry Enterprise functioned as a unified enterprise, namely:

(a) Ultimate control of Barberry Buildings is exercised by Barbanel;

(b) Though the Barberry Buildings are titled in different corporate names through Title-Holding Entities established by Barbanel solely for the purpose of holding title on the Barberry Enterprise's behalf, Barbanel has substantial ownership interests in the entities that nominally hold title to the Barberry Buildings;

(c) Buildings of the Barberry Enterprise are centrally managed;

(d) As shown by Barbanel's public Linkedin.com profile, the Barberry Enterprise has publicized its status as a family-operated real estate business that focuses primarily on multiple family apartment buildings; and

(e) The Barberry Enterprise issues uniform personnel policies and directives to its maintenance personnel, either through its field managers or other managerial personnel.

59. Barbanel had (and he continues to have) an economic interest in the Barberry Buildings.

60. Defendants each had control over terms and conditions of work and over the policies and practices with respect to the employment and compensation of Plaintiff.

61. Defendants employed Plaintiff within the meaning of 29 U.S.C. 201 et seq. and the NYLL.

62. Upon information and belief, the corporate defendants are either alter egos of each other, and/or the corporate defendants failed to operate as entities legally separate and apart from themselves by, among other things:

   (a) Failing to adhere to the corporate formalities necessary to operate corporate Defendants as corporations;

   (b) Defectively forming or maintaining corporations by, among other things, failing to hold annual meetings or maintaining appropriate corporate records;

   (c) Operating corporate Defendants for their own benefit and maintaining control over these corporations as close corporations, all as part of the same residential real estate enterprise that ultimately benefitted Barbanel;

   (d) Intermingling assets and debts; and

   (e) Other actions evidencing a failure to adhere to the corporate form.

63. Upon information and belief, Defendants run the business of all of the Barberry Enterprise as one operation, and Defendants' operations were interrelated and united.

*Plaintiff's Employment with Defendants*

64. Defendants have knowingly engaged in unlawful business practices by requiring Plaintiff to work overtime on a daily and/or weekly basis without overtime compensation that Defendants were obligated to pay under the FLSA and NYLL; paying weekly sums that resulted in effective hourly rates below New York minimum wage; and failing to provide wage notices and accurate wage statements required by NYLL.

65. Beginning in or about 2016, Plaintiff became Defendants' employee when Defendants' purchased the West 161st Street Building, where Plaintiff had long worked as Superintendent.

66. In or about August 2019, Plaintiff was transferred to the St. Nicholas Ave. Buildings, although he continues to reside at the West 161st Street Building.

67. Plaintiff continues to be employed by Defendants' at the St. Nicholas Ave. Buildings.

68. Throughout his employment with Defendants, Plaintiff's duties included, *inter alia*: taking out and sorting garbage and recyclables; sweeping and mopping; cleaning the exterior areas in the back and front of the Buildings; and various maintenance tasks, such as assisting with painting.

69. When he worked at the West 161st Street Building, Plaintiff was additionally responsible for maintaining the laundry room, which was open for tenants' use from 8:00 a.m. to 9:00 p.m. Plaintiff opened the laundry room each morning, and locked it at night, seven days per week.

70. At the West 161st Street Building, Plaintiff regularly worked 62 or more hours per work, as follows: from Monday through Friday, from approximately 7:00am to 5:00pm and, Saturdays and Sundays, from 8:00am to 11am; all with no designated/uninterrupted lunch breaks.

71. At the St. Nicholas Ave. Buildings, Plaintiff regularly works 62 or more hours per work, as follows: Monday through Friday, from approximately 7:00am to 5:00pm and on Saturdays and Sundays, from 8:00am to 11am; all with no designated/uninterrupted lunch breaks.

72. The foregoing hours are merely estimates, as Plaintiff is on-call, and is regularly called upon to perform work, after hours.

73. At all relevant times, Plaintiff was required to remain on call from early morning through late at night, to perform building-related tasks, such as snow removal; facilitating building access for emergency responders and tenants who misplaced keys; address leaks; and handle tenant requests.

74. Regardless of the time of day or night and/or day of the week when such work was needed, Plaintiff was paid a fixed weekly sum.

75. Plaintiff was not paid overtime compensation despite working substantially more than 40 hours per work week in violation of the FLSA.

76. Defendants issued weekly checks to Plaintiff the net amount of $372.00 per week. Plaintiff's weekly pay only covered the first forty hours of work per week.

77. Plaintiff's rate of pay is below the New York City applicable minimum wage rate.

78. Defendants' failure to pay Plaintiff the required amount of overtime pay and minimum wages are willful. Notably, Defendants have been the subject of federal court proceedings brought on behalf of maintenance workers involving similar violations, but have not reformed their unlawful wage practices.

79. Defendants required unlawful deductions from wages, including requiring that Plaintiff pay for tools used solely for the benefit of the Defendants, in violation of Section 141-1.9 of the Rules promulgated by the New York State Department of Labor for the building service industry. 12 N.Y.C.R.R. § 141-1.9.

**AS AND FOR A FIRST CAUSE OF ACTION**
**FLSA Overtime Wage Violations, 29 U.S.C. §§ 201 *et seq.***

80. Plaintiff incorporates in this cause of action each and every allegation of the preceding paragraphs with the same force and effect as though fully set forth herein.

81. At all relevant times hereto, the Defendants have been employers engaged in commerce, as defined under 29 U.S.C. § 203(b) and (d).

82. At all relevant times hereto, the Defendants employed Plaintiff as a maintenance worker, employment positions which engaged Plaintiff in commerce, as defined under 29 U.S.C. §§ 203(b), (e), (g) and 29 U.S.C. § 207(a)(1).

83. At all times relevant hereto, the Defendants have been an "enterprise engaged in commerce or in the production of goods for commerce," as defined under 29 U.S.C. § 203(s)(1).

84. In the performance of his duties for Defendants, Plaintiff worked substantially more than forty (40) hours per week, yet did not receive overtime compensation for the work, labor and services he provided to Defendants, as required by the FLSA, 29 U.S.C. §§ 206 and 207. The precise number of unpaid overtime hours will be proven at trial.

85. Defendants' violations of the FLSA were willful violations of the FLSA, within the meaning of 29 U.S.C. § 255(a).

86. As a result of the foregoing, Plaintiff seeks judgment against Defendants for all unpaid wages, including overtime wages owed by Defendants to Plaintiff for the three-year period preceding the filing of this case, together with an award of an additional equal amount as liquidated damages, and costs, interest, and reasonable attorneys' fees, as provided for under 29 U.S.C. § 216(b).

**AS AND FOR A SECOND CAUSE OF ACTION**
**Violation of the New York Minimum Wage Act**

87. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

88. The minimum wage provisions of the NYLL, including Article 19, and its supporting regulations, apply to Defendants and Plaintiff.

89. Defendants, in violation of the NYLL, willfully paid Plaintiff less than the minimum wage in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor.

90. Plaintiff was damaged in amounts to be determined at trial.

91. Due to Defendants' willful violations of the NYLL, Plaintiff is entitled to recover from Defendants his unpaid minimum wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

**AS AND FOR A THIRD CAUSE OF ACTION**
New York Labor Law – Overtime Wages

92. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

93. The overtime wage provisions of the NYLL, including Article 19, and its supporting regulations, apply to Defendants and Plaintiff.

94. Defendants willfully failed to pay Plaintiff for all of the hours that he worked in excess of 40 hours in a workweek.

95. Defendants willfully failed to pay Plaintiff overtime at a rate of time and one-half his effective, regular hourly rate for hours worked in excess of 40 hours per workweek.

96. Defendants willfully failed to keep, make, preserve, maintain, and furnish accurate records of time worked by Plaintiff.

97. As a result of Defendants' knowing or intentional failure to pay Plaintiff overtime wages for hours worked in excess of 40 hours per workweek, Plaintiff is entitled to compensation for unpaid overtime, liquidated damages, attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

**AS AND FOR A FOURTH CAUSE OF ACTION**
NYLL Wage Theft Prevention Act – Failure to Provide Wage Statements

98. Plaintiff incorporates by reference each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

99. The NYLL and Wage Theft Prevention Act ("WTPA") require employers to provide employees with an accurate wage statement each time they are paid. Defendants willfully failed to provide Plaintiff with wage statements at the end of every pay period that correctly identified the name of the employer; address of employer; number of overtime hours worked; and such other information as required by NYLL § 195(3).

100. Due to Defendants' violations of the NYLL, Plaintiff is entitled to recover from Defendants liquidated damages of $250.00 per work day that the violations occurred, or continue to occur, up to $5,000.00, together with costs, reasonable attorneys' fees, pre-judgment and post-judgment interest, and injunctive and declaratory relief, pursuant to the NYLL § 198(1-d).

**AS AND FOR A FIFTH CAUSE OF ACTION**
**NYLL Wage Theft Prevention Act (WTPA) – Failure to Provide Wage Notices**

101. Plaintiff incorporates by reference in this cause of action the prior allegations of this Complaint as if fully alleged herein.

102. The NYLL and WTPA, as well as the NYLL's interpretative wage orders, require employers to provide all employees with a written notice of wage rates at the time of hire and whenever there is a change to an employee's rate of pay.

103. From its enactment on April 9, 2011 through January 5, 2016, the WTPA also required employers to provide an annual written notice of wages to be distributed on or before February 1 of each year of employment (amended in January 2015 to be distributed "upon hiring" and not annually) and to provide to employees, a written notice setting forth the employee's rates of pay and basis thereof; the name of the employer; physical address of the employer's business; names used by the employer; and other mandated disclosure.

104. In violation of NYLL § 191, Defendants willfully failed to furnish Plaintiff, at the time of hiring (and annually for those years prior to the January 2015 amendment) or

15

whenever there was a change to their rate of pay, with wage notices required by NYLL § 191.

105. Due to Defendants' violation of NYLL § 195(1), Plaintiff is entitled to recover from Defendants liquidated damages in the amount of $50.00 per work day, up to $5,000.00, together with reasonable attorneys' fees, and costs of this action, pursuant to the NYLL § 198(1-b).

## AS AND FOR A SIXTH CAUSE OF ACTION
### Illegal Deductions, New York Labor Law, Article 19 § 193
### 12 N.Y.C.R.R. § 2.10(a)

106. Plaintiff incorporates each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

107. In violation of the New York Labor Law, Article 19, § 193, Defendants unlawfully deducted wages from Plaintiff by requiring Plaintiff to spend his own money on work-related expenses, including tools of the trade to complete mandated work. This further reduced Plaintiff's wages below the amounts required by the NYLL and FLSA.

108. As a result of the foregoing, Plaintiff seeks judgment against Defendants for reimbursement of unlawful deductions, as well as liquidated damages, and interest, and such other legal and equitable relief from Defendants' unlawful and willful conduct as the Court deems just and proper.

## RELIEF SOUGHT

**WHEREFORE,** Plaintiff, Juan Pineda, respectfully requests that the Court grant the following relief:

1. Declaring, adjudging and decreeing that Defendants violated the minimum wage and overtime provisions of the FLSA and NYLL as to Plaintiff;

2. Awarding Plaintiff damages and restitution for unpaid compensation, unpaid minimum wages, unpaid overtime compensation, including interest thereon, and statutory penalties in an amount to be proven at trial, as well as liquidated damages;

3. Awarding statutory damages for Defendants' failure to provide Plaintiff with statements and information required by NYLL § 198(1-b) and (1-d) and NYLL § 195(3);

4. Awarding statutory damages for Defendants' violation of NYLL § 191 by failing to furnish Plaintiff, at the time of hiring (and annually for those years prior to the January 2015 amendment) or whenever there was a change to his rate of pay, with wage notices required by NYLL § 191;

5. Declaring that Defendants' violations of the NYLL were willful;

6. For all other Orders, findings and determinations identified and sought in this Complaint;

7. For prejudgment and post judgment interest on the amount of any and all economic losses, at the prevailing legal rate;

8. For reasonable attorneys' fees and expenses of this action, pursuant to 29 U.S.C. § 216(b), New York Labor Law and as otherwise provided by law; and

9. Such other relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the Complaint.

Dated: April 28, 2021                                **RAPAPORT LAW FIRM, PLLC**

                                                     /s/
                                            By: _____
                                                 _____
                                                 Marc A. Rapaport, Esq.
                                                 80 Eighth Avenue, Suite 206

New York, NY 10011
(212) 382-1600
mrapaport@rapaportlaw.com

**MILLER LAW FIRM, PLLC**

By: /s/
 Meredith R. Miller, Esq.
 167 Madison Avenue, Suite 503
 New York, NY  10016
 (347) 878-2587
 meredith@millerlaw.nyc

*Attorneys for Plaintiff Juan Pineda*